UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SCOTT L.,

                                    Plaintiff,

v.                                                          CASE NO. 6:25-cv-06113
                                                            (JGW)
COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.

_____

J. Gregory Wehrman, U.S. Magistrate Judge,

### MEMORANDUM-DECISION and ORDER

The parties consented in accordance with a standing order to proceed before the undersigned. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the Court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Docs. 6, 9), as well as Plaintiff's Reply (Doc. 10). Upon review of the administrative record and consideration of the parties' filings, Plaintiff's Motion for Judgment on Pleadings (Doc. 6) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Doc. 9) is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

I.      **RELEVANT BACKGROUND**

        A.      **Procedural Background**

On April 19, 2021, Plaintiff filed an application for a period of disability and disability insurance benefits, as well as an application for supplemental security income,[1] alleging

_____

[1] The date on which Plaintiff filed his claim for supplemental security income is not clear.  While the ALJ identified that the application was filed on November 26, 2021, (*see* Tr. 35), which is also reflected in the

an onset date of February 23, 2021 for both applications.  (Tr. 286-295, 296-302, 303-308.)  No determination was initially made on the claim for supplemental security income, but the application for a period of disability and disability insurance benefits was denied on January 10, 2022. (Tr. 100.)   Thereafter, both applications were denied upon reconsideration on August 4, 2022.  (Tr. 109, 110.)  Plaintiff then timely requested a hearing before an Administrative Law Judge (ALJ), (Tr. 194-95), and appeared with counsel for a telephonic hearing before ALJ Anthony Dziepak on April 10, 2023, (Tr. 56-95).  On February 15, 2024, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled.  (Tr. 32-55.)  The Appeals Council denied Plaintiff's request for review, (Tr. 19-24), and Plaintiff timely filed his appeal to this Court.

**B.    Factual Background[2]**

Plaintiff was born on November 14, 1985, (Tr. 111), and obtained his GED, (Tr. 325).  Plaintiff alleged several impairments in support of his disability claim, including posttraumatic stress disorder (PTSD), borderline personality disorder, depression, and anxiety.  (Tr. 112.)

Plaintiff has a history of alcohol and substance abuse.  He acknowledged the continued urge to use drugs and alcohol, especially when something bad happened, but testified that, instead of using, he locks himself in his apartment and sits with his service dog, who he trained and had certified.  (Tr. 69, 70.)  Plaintiff explained that he no longer attends group meetings, such as alcoholics anonymous.  (Tr. 69.) He noted that, while

---

agency decision, (*see* Tr. 112), one application references a date of April 19, 2021, (*see* Tr. 295), while a separate application reflects a date of February 4, 2022, (*see* Tr. 303).  Nevertheless, the date of filing is unimportant, as there has been no challenge.

[2] This recitation of facts primarily includes testimony from the hearing before the ALJ.  Other facts will be developed throughout the opinion as relevant to the Court's analysis.

they were helpful for the first year or so, he felt they became redundant. (*Id.*) Instead, he now meets with a peer, his counselor, and his medication provider, all on a regular basis. (*Id.*)

Plaintiff confirmed he has good days and bad days, noting that on the bad days, he has no focus. (Tr. 74.) On those days, he paces and cannot finish tasks, distracted by his thoughts. (*Id.*) Plaintiff explained that, even when on his medication, he has difficulty focusing and experiences extreme paranoia. (Tr. 75-76.) He extrapolated that he feels like "people are always out to get [him]." (Tr. 76.) On those bad days, he does not accomplish anything, including housework or even wearing clean clothes. (Tr. 91.) Plaintiff testified that he experiences bad days once or twice a week. (Tr. 92.) Plaintiff testified that he used medical marijuana, Xanax, lithium, Adderall, and Seroquel. (Tr. 67.)

Plaintiff described his last job, indicating that he could no longer do the work because the job was located in his hometown, which caused stress, and he needed to leave it. (Tr. 63-64.) He also indicated that he would get frustrated, which would cause "impulse behaviors and whatnot." (Tr. 64.) He also discussed another job, in which he was let go due to walking off the job numerous times. (Tr. 72-73.)

### C.    Medical Opinion Evidence

The record contains several medical opinions, and in light of Plaintiff's challenges before this Court, a summary of the opinions is helpful.

Agency reviewer Dr. Blackwell opined that Plaintiff could perform unskilled work, which the ALJ found to be "partially persuasive when substance abuse is stopped." (Tr. 47.)

Consultative examiner Dr. Farmer opined there was:

3

no evidence of limitation understanding, remembering or carrying out simple tasks, moderate limitations using reason and judgement to make work-related decisions, moderate to marked limitations interacting with supervisors, coworkers and the public, moderate limitations sustaining concentration, pace, ordinary routine and regular attendance and moderate to marked limitations regulating emotions, controlling behavior and maintaining well-being.

(*Id.*)  The ALJ found the opinion to be "limited in persuasiveness, when considered in the context of sobriety and treatment."  (Tr. 47.)

Treating nurse practitioner Linda Kovac-Tantalo completed a mental health assessment, opining "a less than 10% preclusion of task performance for mental abilities and aptitudes needed to do unskilled work but later opines mild to moderate limitations in the ability to concentrate, persist or maintain pace and to adapt or manage oneself."  (*See* Tr. 48) (citing Tr. 1320-25.) The ALJ found the opinion to be "somewhat persuasive, when [Plaintiff] is not using substances and medically compliant."  (*Id.*)

### D.    The ALJ's Decision

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law.

1.  The claimant has not engaged in substantial gainful activity since February 23, 2021, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*). (Tr. 38.)

2.  The claimant has the following severe impairments: substance abuse disorder; depression disorder; anxiety disorder; post-traumatic stress disorder (PTSD) and bipolar disorder (20 CFR 404.1520(c) and 416.920(c)). (Tr. 38.)

3.  Including the claimant's substance use, the severity of the claimant's impairments meets the criteria of section 12.04 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 416.920(d), 416.925). (Tr. 39.)

4.  If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would have a severe impairment or combination of impairments (20 CFR 404.1522 and 404.922). (Tr. 42.)

4

5. If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(f) and 416.994(b)(5)(i)). (Tr. 43.)

6. After careful consideration of the entire record, I find that, if the claimant stopped the substance use, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: unskilled work with no assembly line production-paced type work. The claimant will have no public interaction or team/tandem collaborative project type work with coworkers. The claimant is able to work around coworkers with interaction limited to elective superficial conversations. (Tr. 45.)

7. The claimant is still unable to perform past relevant work (20 CFR 404.1565 and 416.965). (Tr. 48.)

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964). (Tr. 48.)

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968). (Tr. 48.)

10. If the claimant stopped the substance use, considering the claimant's age, education, work experience, and residual functional capacity, there have been jobs that exist insignificant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c) and 416.966). (Tr. 49.)

11. The substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if he stopped the substance use (20 CFR 404.1520(g), 404.1535, 416.920(g) and 416.935). Because the substance use disorder is a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision. (Tr. 49.)

## II.    LEGAL STANDARD

### A.    Standard of Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and

were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

### B.    Standard to Determine Disability

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a).

At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability

to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient residual functional capacity (RFC) for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

## III.    ANALYSIS

Plaintiff asserts two points in support of remand.   First, he argues that the ALJ failed to explain why he did not include the more stringent limitations provided in Dr. Farmer's opinion.  Second, he maintains that the ALJ improperly rejected Plaintiff's need for a service dog.

### A. The ALJ Properly Rejected Additional Limitations Beyond Those Incorporated in the RFC.

Plaintiff contends that the ALJ erred by not limiting Plaintiff's interaction with supervisors, arguing that the ALJ improperly evaluated the opinion of Dr. Farmer.  (*See* Doc. 6-1 at 14.)  Plaintiff also argues that the ALJ did not include in the RFC several of the more stringent limitations assigned by Dr. Farmer, nor did the ALJ explain his reasons for rejecting them in his evaluation of the opinion. (*See id.*)

As a preliminary matter, a claimant's RFC is the most he can still do despite his limitations and is based on all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). The regulations explicitly provide that the RFC is an administrative finding reserved to the Commissioner and not a medical finding. 20 C.F.R. § 404.1527(d); *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (recognizing that "the ALJ bears 'the final responsibility' for making RFC determinations"); *see also Desirae D. v. Comm'r of Soc. Sec.*, 20-cv-00054-JGW, 2021 WL 2042576, at *3 (W.D.N.Y. May 21, 2021). As such, the RFC conclusion "need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence." *Schillo*, 31 F.4th at 78. Indeed, an ALJ is permitted to "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). This naturally requires the ALJ to reconcile conflicting medical evidence in the record. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).

With regard to an ALJ's consideration of medical opinion evidence, the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, provide that the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 7 (W.D.N.Y. 2021) (citing 20

C.F.R. § 416.920c(a) & (c)). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain his consideration of the supportability and consistency factors by pointing to specific evidence in the record to support the ALJ's findings regarding medical opinions. *Id.* (citing 20 C.F.R. § 416.920c(b)(2)).[3]

In his decision, the ALJ found Dr. Farmer's opinion to be "limited in persuasiveness, when the claimant is not using substances and is medication compliant." (Tr. 47.)[4]  Significantly, the ALJ noted that Dr. Farmer cited "the substance abuse issues, in combination with mental health impairments in support of the assessments."  (*See id.*) Yet, the examination, which occurred when Plaintiff was in residential substance abuse treatment, and thus sober for a period, "describe[d] a somewhat anxious claimant, who is friendly, cooperative and with normal speech, thought process and intact memory and concentration skills."  (*See id.*) (citing Tr. 555-59). The ALJ acknowledged that Plaintiff "reported abilities to cook and prepare food, clean, do laundry, shop, manage money, drive a vehicle and take public transportation."  (*See id.*) (citing Tr. 555-59).  He concluded

---

[3] With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source in the opinion, the more persuasive the medical findings will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(1)). Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(2)). Supportability focuses on the fit between a medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating sources] opinion.'" *Id.* (quoting *Shawn H. v. Comm'r of Soc. Sec.*, Civil Action No. 2:19-cv-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)) (alteration in original).

[4] The ALJ separately analyzed Dr. Farmer's opinion when considering Plaintiff's impairments in conjunction with using substances and not being medication compliant. (*See* Tr. 41.)  Under those circumstances, the ALJ found Dr. Farmer's opinion to be partially persuasive. (*See id.*)

9

that this "evidence [was] reasonably consistent with findings from nurse Yonker, during the claimant's almost year long period of sobriety and treatment." (*See id.*)

Having carefully reviewed the record, the Court finds that ALJ Dziepak's RFC, including the social limitations, are supported by substantial evidence. To begin, the record evidence supports the ALJ's social interaction limitations as to the general public and co-workers. Plaintiff's difficulty with social interactions, as described by him, is a feeling of paranoia that someone is out to get him, yet, he indicated that if he were in a completely solitary situation, he would get lost in his own thoughts. (Tr. 77.) Treatment records when sober generally reflect that Plaintiff was cooperative and pleasant, and interacts well with his providers. *(See, e.g.,* Tr. 777 (reflecting Plaintiff was friendly, spontaneous, cooperative, and in no acute distress; also noting depression was in remission and anxiety was "well controlled"); Tr. 557 (noting that Plaintiff "was friendly and cooperative"); Tr. 665 (reflecting that Plaintiff was "alert and oriented, he is engaging well with good eye contact"). Plaintiff also admittedly worked two separate jobs during the relevant time period. (*See* Tr. 62-72.) He did not testify to any specific difficulties with supervisors. *See id.*

To the contrary, Plaintiff identified difficulty in getting along with people generally, (*see* Tr. 339), and also with feeling that "everyone is plotting on me," noting that he feared going out in public, (Tr. 345; *see also* Tr. 75-76). But his treating provider Nurse Practitioner Kovac-Tantalo opined that he could "sustain an ordinary routine without special supervisor" and "work in coordination with or proximity to others without being unduly distracted." (*See* Tr. 1322.) She further noted that Plaintiff would be limited in "[a]ccept[ing] instructions and respond appropriately to criticism from supervisors" less

than 10% of the day.  (*See* Tr. 1322-23.)  Indeed, she found that Plaintiff was only mildly limited in interacting generally with others.  (*See* Tr. 1325.)  And state agency reviewer, Dr. Blackwell, opined that Plaintiff was not significantly limited in sustaining an ordinary routine without special supervision, working closely with others and co-workers, and accepting instructions and responding appropriately to criticism from supervisors.  (*See* Tr. 127-28.)

Indeed, the only evidence Plaintiff points to in support of a limitation regarding supervisors is Dr. Farmer's opinion.  But, as noted above, the ALJ expressly found Dr. Farmer's opinion "limited in persuasiveness, when the claimant is not using substances and is medication compliant."  (Tr. 47.)  While Dr. Farmer did find a "moderate to marked limitation interacting adequately with supervisors, co-workers and the public," (*see* Tr. 558), his opinion does not provide a basis for or cite any evidence supporting any limitations regarding supervisors.  Significantly, nothing required the ALJ to accept Dr. Farmer's opinion completely.  *See April W. v. Comm'r of Soc. Sec.,* No. 1:24-cv-00044-MAV, 2024 WL 4804778, at *5 (W.D.N.Y. Nov. 14, 2024) (recognizing that an ALJ "is free to reject portions of medical-opinion evidence not supported by objective evidence") (quoting *Demeca P. v. Comm'r of Soc. Sec.,* No 1:22-cv-0504, 2024 WL 4505265, at *4 (W.D.N.Y. Oct. 16, 2024))*.*  Given the lack of other evidence supporting a limitation regarding supervisors, the ALJ rightly did not impose such a limitation in the RFC.

Plaintiff also takes issue with the ALJ's decision not to include in the RFC additional limitations, including maintaining an ordinary routine, attendance at work, regulating emotions, controlling behavior, maintaining personal hygiene, and taking appropriate precautions, as suggested by Dr. Farmer.  (*See* Doc. 6-1 at 15.)  However, for the reasons

11

noted above, the same conclusion is required. Specifically, the ALJ is not required to accept portions of a medical opinion that are inconsistent with the record as a whole, *see April W.*, 2024 WL 4804778, at *5, and Plaintiff identifies no other evidence suggesting the identified limitations are necessary or supportable. Further, the Court notes that the RFC's limitations do account for certain of these limitations. *See Rushford v. Kijakazi*, No. 23-317, 2023 WL 8946622, at *2 (2d Cir. Dec. 28, 2023) (noting that it is "well-established that . . . moderate limitations do not prevent individuals from performing 'unskilled work'") (quoting *Zabala v. Astrue*, 595 F.3d 402, 410–11 (2d Cir. 2010)); *see also Benjamin C. v. Comm'r of Soc. Sec.,* No. 5:21-CV-872 (ATB), 2022 WL 16571699, at *10 (N.D.N.Y. Nov. 1, 2022) (recognizing that "[b]y limiting plaintiff to unskilled work requiring only simple, routine tasks and simple work-related decisions, the ALJ accounted for the functional limitations associated with plaintiff's difficulties with concentration, pace, and social interaction"); *Melisa G. v. Berryhill*, Civ. No. 3:18-cv-508 (DJS), 2019 WL 2502726, at *5 (N.D.N.Y. June 17, 2019) (recognizing that moderate limitations in attention and concentration, performing activities on a schedule, and maintaining regular attendance do not preclude unskilled work); *Washburn v. Colvin*, 286 F. Supp. 3d 561, 566 (W.D.N.Y. 2017), appeal dismissed (Mar. 30, 2018) ("[I]t is well settled that a limitation to unskilled work sufficiently accounts for moderate limitations in work-related functioning.").

Simply put, Plaintiff's disagreement with the ALJ's RFC conclusion is not grounds for remand. *See David C. v. Comm'r of Soc. Sec.*, No. 6:23-cv-06510-CJS, 2024 WL 4347151, *18 (W.D.N.Y. Sept. 30, 2024) (citing *Lisa M. o/b/o J.S. v. Comm'r of Soc. Sec.*, No. 1:21-cv-00292 EAW, 2023 WL 3943997, at *3 (W.D.N.Y. June 12, 2023) ("A disagreement with how the ALJ weighed the evidence is not a valid basis to challenge

the ALJ's determination."). *See also Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (noting that "[t]he substantial evidence standard means once an ALJ finds facts, we can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'") (emphasis in original) (citation omitted).

Based on the above, the Court finds there is "more than a mere scintilla" of evidence supporting the ALJ's RFC, satisfying the sufficient evidence standard. *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (recognizing that "substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") Moreover, Plaintiff has not shown he is *incapable* of performing such work, which is his burden. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (noting that a plaintiff has the burden to prove a more restrictive RFC). Plaintiff has simply not shown that "the record requires a reasonable factfinder to reach a different result." *See Spottswood v. Kijakazi*, No. 23-54-cv, 2024 WL 89635, at *3 (2d Cir. Jan. 9, 2024) (summary order). Thus, the Court finds no error.

### B. The ALJ Properly Evaluated Plaintiff's Need for a Service Dog.

Plaintiff also argues that the ALJ erred by rejecting Plaintiff's need for a service dog. (*See* Doc. 6-1 at 19.) Plaintiff contends that, in light of Dr. German's letter, the ALJ's failure to incorporate a service dog in the RFC was remandable error. (*See id.*)

13

The record reflects that in May 2022, Plaintiff requested "a letter to document that his dog is a service dog in order to get housing." (*See* Tr. 641.) Accordingly, Dr. German wrote a letter regarding Plaintiff's use of a service animal:

[a]s a result of multiple mental illness, including chronic PTSD, [Plaintiff] has certain limitations and difficulties brought by his mental condition. I support their use of a dog as a service animal. My patient's disability causes him difficulty with daily task, leaving the house, being alone, maintaining emotional stability, and social interactions. The assistance of his service animal mitigates their disability by helping with mood regulation, preventing or interrupting impulsive behaviors, facilitating social interactions, and providing emotional support. I support the use of a service animal.

(Tr. 718.)

The ALJ addressed Dr. German's letter in support of a service animal:

Kenia Maria German, MD, a treating psychiatrist of the claimant, issued a letter in support of a service animal (Ex. 9F, 1). I find the letter unpersuasive. Evaluation from Kenia Maria German, MD revealed a residential admission for cocaine dependence but difficulties transitioning into residential housing because of restrictions against the claimant's emotional support/service dog (Ex. B6F, 38). Notably, the claimant obtained the dog as a rescue dog but admitted to training his own dog as a service dog and getting him certified as a service dog (B10F, 20; HR). However, there is no direct evidence of certification in the record. Moreover, the claimant's purported ability to train the dog, which presumably requires good knowledge, understanding, persistence and patience, is not consistent with allegedly mentally disabling symptoms and limitations. Additionally, in their letter, Dr. German did not address substance abuse issues and the record provides insufficient support or explanation and is not consistent with a need for a service dog in the context of sobriety and medication compliance. I find the letter unpersuasive.

(Tr. 47.)

The Court finds no error in the ALJ's rejection of a service animal limitation in the RFC. Dispositively, Plaintiff has failed to establish that a treatment provider prescribed or formally recommended the use of a service dog. *See Benjamin C.*, 2022 WL 16571699, at *11; *Natividad S. v. Comm'r of Soc. Sec.*, No. 1:20-CV-01507, 2022 WL

14

2718511, at *4 (W.D.N.Y. July 13, 2022). While Dr. German "supported" the use of the dog, this is insufficient to prove its necessity to Plaintiff's functionality.  *See Benjamin C.*, 2022 WL 16571699, at *11 (finding that the mere reference to the service dog in treatment notes, without evidence from a medical professional noting that it was necessary for a claimant to function, was insufficient to establish the dog as a medical necessity).

Indeed, in a factually similar situation, the court in *Natividad S. v. Comm'r of Soc. Sec.* found the service dog unnecessary when the treating provider wrote a letter to the claimant's landlord noting that to "enhance his ability to live independently and to fully use and enjoy the dwelling unit you own, I have prescribed [Plaintiff] to keep his emotional support animal. The presence of this animal is necessary for the mental health of [Plaintiff] because its presence will mitigate the symptoms he is currently experiencing."  *See Natividad S.,* 2022 WL 2718511, at *4.  That court concluded that, based on the record, this letter was issued as "a courtesy to Plaintiff but [the medical provider] did not, per her functional assessments, believe that the dog was necessary to Plaintiff's functioning in a workplace."  *See id.*  The same conclusion is warranted here, especially since Dr. German's word choice of "support" was less assertive than the provider in *Natividad S.* While this Court appreciates that the dog may benefit Plaintiff, nothing in the record establishes it was necessary for Plaintiff to function in a work environment.  *See id.* at *3 (noting that "an ALJ is not obligated to determine whether a claimant's functioning would increase with the animal; rather, the question is whether a claimant is unable to function *without* the animal.")

Because there is no evidence in the record demonstrating that any medical provider prescribed the service dog or opined that its presence was necessary for

Plaintiff's functionality, the Court finds no error in the ALJ's decision not to include the service dog in the RFC.

## IV.    CONCLUSION

Based on the foregoing, the Court finds no basis for remand.  **ACCORDINGLY**, it is:

**ORDERED** that Plaintiff's Motion for Judgment on the Pleadings (Doc. 6) is **DENIED**, and it is further

**ORDERED** that Defendant's Motion for Judgment on the Pleadings (Doc. 9) is **GRANTED**.

The Clerk of Court is **DIRECTED** to close this case.


Dated: July 20, 2026                    J. Gregory Wehrman
Rochester, New York                     HON. J. Gregory Wehrman
                                        United States Magistrate Judge

16